UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RASHON SNYDER,

        Plaintiff,

      v.

CHICAGO TRANSIT AUTHORITY,

        Defendant.

No. 22 CV 6086

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rashon Snyder filed this lawsuit against his former employer, the Chicago Transit Authority, bringing claims related to the CTA's denial of Snyder's request for a religious accommodation to the CTA's mandatory COVID-19 vaccination policy. The CTA has filed a motion to dismiss Snyder's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the CTA's motion is granted in part and denied in part.

I. **Background**

Synder was employed by the CTA for almost seven years, starting in September 2015. [8] ¶ 3.[1] In September 2021, Snyder submitted a request for a

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from Snyder's complaint, [8]. Written instruments attached to the complaint are part of the complaint. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)). Snyder incorporates various documents related to his exemption request into the complaint, [8] at 29–74, so I consider them here. Snyder also attaches additional documents to his response, which I consider here as well. [22] at 54–59; *see Geinosky*, 675 F.3d at 745 n. 1 ("a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove").

religious accommodation from the CTA's mandatory COVID-19 vaccination policy to the Equal Employment Opportunity Unit of the CTA. [8] ¶ 3. Snyder's request for religious accommodation stated, "I practices [sic] the laws of cleanliness and the dietary laws outlined in the books of Leviticus, the 11th chapter and Deuteronomy, the 14th chapter." [8] at 42. "The bible instructs us to refrain from the ingestion of unclean animals, in this instance, pork or derivatives, such as gelatin[,] which are in most vaccines." [8] at 42.

Snyder's accommodation request included a signed letter from his minister, which added: "[V]accines and immunizations are inconsistent with the beliefs of our culture. Although an individual is encouraged to make informed decisions and is at liberty to choose to receive such vaccinations or immunizations at their discretion. It is the decision of Rashon Snyder, an employee of the Chicago Transit Authority for more than 6 years, to forgo being vaccinated and ask that his request for exemption be granted to him at this time." [8] at 36.

Snyder also alleges that he "sincerely held religious beliefs [] that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life." [8] ¶ 50. Due to these religious beliefs, Snyder refused COVID-19 vaccination. [8] ¶ 53.

In December 2021, the CTA's EEO unit asked Snyder to produce additional information for approval of the religious accommodation. [8] ¶ 5; [8] at 61. Snyder submitted the requested information, including additional non-religious reasons he

did not want to get the vaccine, including safety concerns that the vaccines are "unclean and do harm to the body long-term." [8] ¶ 6; [8] at 64.

Snyder did not receive a decision regarding his accommodation until April 20, 2022, when the Religious Accommodation Review Committee denied Snyder's request. [8] ¶ 8. The stated reason for the denial was that "[t]he request d[id] not substantiate a sincerely held religious belief or moral conviction that conflict[ed] with the CTA's requirement that all employees be fully vaccinated against Covid-19." [8] ¶ 8. The denial allotted Snyder five weeks to either become fully vaccinated or be subject to discipline and discharge. [8] ¶ 10.

Shortly after the denial, Snyder filed a Title VII religious discrimination complaint with the CTA's EEO unit. [8] ¶ 12. He did not receive a response. [8] ¶ 13. On May 17, 2022, Snyder attended a disciplinary hearing with a CTA Garage Manager and was written up for a behavioral disciplinary charge of non-compliance with the vaccination policy. [8] ¶ 14. Snyder was given the date of May 24, 2022, to get vaccinated or the CTA would put Snyder on no-pay status and remove him from service. [8] ¶ 17.

On May 24, 2022, the same CTA Garage Manager held a second disciplinary hearing for Snyder's non-compliance with the policy. [8] ¶ 20. Snyder was placed on no-pay status and removed from service. [8] ¶ 20. Snyder was then given until May 31, 2022, to be vaccinated or be discharged. [8] ¶ 24. On June 2, 2022, Snyder was discharged for violating the vaccination policy. [8] ¶ 26.

On June 16, 2022, Snyder filed a second grievance with his union and a second Title VII complaint with the CTA's EEO unit. [8] ¶¶ 30–31. Snyder alleges that he has filed charges with the EEOC asking for immediate right to sue. [8] ¶ 38. Snyder also attached a Determination and Notice of Rights to his complaint from the EEOC. [8] at 44–46.

Snyder subsequently filed this action, bringing the following causes of action:

- "Count I: Employer Doesn't Want to Make Accommodations for Disabilities, Allergies and Religious Exemption Damages",
- "Count II - Violation of EEOC Regulations",
- "Count III - Violation of Genetic Information Nondiscrimination Act",
- "Count IV - Violation of Religious Freedom Restoration Act",
- "Count V - 18 USC § 1091",
- "Count VI - Title VII of the Federal Civil Rights Act of 1964",
- "Count VII - Title VII of the Federal Civil Rights Act of 1871",
- "Count VIII - Violation of Emergency Use Authorization Provisions of 21 U.S.C. § 360bbb-3, et seq," and
- "Count [IX] - Right to select health care providers, Health Care Right of Conscience Act, 754 ILCS 70."

[8] ¶¶ 33–92. Snyder also identified additional statutes, "Title 18 Section 242" and "42 U.S.C. § 1983", as being at issue in this case. [8] at 3. The CTA now moves to dismiss Snyder's claims under Rule 12(b)(6) for failure to state a claim. [18].

## II.    Amendment to the Complaint, Waiver, and Surreply

As an initial matter, the CTA argues that Snyder's response to its motion to dismiss attempts to improperly amend the complaint and that Snyder failed to respond to some of the CTA's arguments, therefore waiving them. [24] at 2–4. While Snyder's response to the CTA's motion is formatted as, and is identical in part to, his complaint, I find that it is not an attempt to amend the complaint. As a pro se plaintiff, I view Snyder's response with an "understanding eye," and have given it

4

"fair and meaningful consideration." *See Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996) (quotation omitted). While Snyder has formatted his filing as a complaint, his intention to file a response is clear. I accept his filing as such. *Cf. Otis v. Demarasse*, 886 F.3d 639, 644–45 (7th Cir. 2018) (holding that a pro se litigant's inartfully drafted third complaint should have been accepted as an amended complaint, not a superseding complaint).

But I do not grant Snyder special dispensation for his failure to respond or procedural mistakes. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)) ("[I]t is … well established that pro se litigants are not excused from compliance with procedural rules."); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("pro se litigants are not entitled to a general dispensation from the rules of procedure.").

Where Snyder has failed to address the CTA's arguments, he has conceded them. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th. Cir. 2019) (holding even a complaint that satisfies Rule 8(a)(2) can be subject to dismissal "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022) (citing *Douglas v. Reeves*, 964 F.3d 643, 649 (7th Cir. 2020) ("Although we construe pro se filings liberally, pro se litigants are generally subject to the same waiver rules as those who are represented by counsel.").

Snyder has also filed a surreply, [25], without leave from the court, after the close of briefing. *See* [21] (setting the briefing schedule). To the extent that Snyder attempts to address issues already raised in the CTA's motion to dismiss, the surreply provides no explanation as to why Snyder did not raise these arguments in his opposition brief, and I see none. Snyder did not ask for permission to file a surreply. The filing is therefore stricken.

## III.  Motion to Dismiss

When reviewing a 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vil. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.    Administrative Exhaustion

The CTA argues that Snyder's Genetic Information Nondiscrimination Act (GINA) and Title VII claims should be dismissed for failure to exhaust administrative remedies. [18] at 6–7.

Failure to exhaust administrative remedies is an affirmative defense. *Bibbs v. Sheriff of Cook Cnty.*, 618 F.App'x 847, 849 (7th Cir. 2015). Snyder was not required to plead that he exhausted the EEOC procedures. *See Kincaid v. Sangamon Cnty.*, 435 F.App'x 533, 536 (7th Cir. 2011). A court may, however, dismiss a complaint when "the existence of a valid affirmative defense, such as the failure to exhaust, is so plain

from the face of the complaint that the suit can be regarded as frivolous." *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010) (citation omitted). "Failure to timely file an administrative charge is an affirmative defense, and the burden of proof … therefore rests on the defendant." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009).

Snyder's complaint here does not establish the affirmative defense. While Snyder has not provided any details of the charges he filed with the EEOC, he has attached a Determination and Notice of Rights to his complaint. [8] at 44–46. The complaint also states that Snyder has filed charges with the EEOC asking for immediate right to sue. [8] ¶ 38.

The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202–03 (7th Cir. 1996). Without seeing the EEOC charge that resulted in the attached Determination and Notice of Rights, [8] at 44–46, I cannot determine if Snyder has adequately exhausted his administrative remedies. Therefore, dismissal of Snyder's Title VII and GINA claims for failure to exhaust would be inappropriate at this time.

**B.  Title 18 Claims**

Snyder brings two Title 18 criminal claims, for genocide and deprivation of rights under color of law, against the CTA. [8] at 3, 20. As the CTA points out, private citizens typically cannot pursue claims under federal criminal statutes. [18] at 3 (citing *Johnson v. Piontek*, 799 F.App'x 418, 419 (7th Cir. 2020)).

Snyder makes two arguments in his attempt to bring the criminal claims against the CTA. First, Snyder argues that *Cort v. Ash*, 422 U.S. 66, 78 (1975), permits him to bring a civil cause of action where a defendant's conduct violates a criminal statute. [22] at 13. Second, Snyder argues that he brings these claims under 42 U.S.C. § 1983. *Id.*

Both arguments depend on one question: did Congress intend to create an individually enforceable right when enacting these statutes? *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.").

*Cort* sets forth four factors to determine whether a statute grants a private right of action. 422 U.S. at 78. While it has not explicitly overruled the *Cort* test, the Supreme Court has retreated from it and has focused primarily on legislative intent, *Cort*'s second factor. *Edelson v. Ch'ien*, 405 F.3d 620, 630–31 (7th Cir. 2005). The party seeking to imply a private right of action bears the burden to show that Congress intended to create one. *Suter v. Artist M.*, 503 U.S. 347, 363–64 (1992).

Similarly, violation of a federal statute does not automatically give rise to claim under § 1983. "In order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original); *see also Gonzaga Univ.*, 536 U.S. at 283 ("[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." (emphasis in original)). "[T]to

8

sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005). Nothing "short of an unambiguously conferred right" will support a cause of action brought under § 1983. *Gonzaga Univ.*, 536 U.S. at 283. Snyder fails to meet the burden of showing that Congress intended to create a right in either statute.

As to Snyder's genocide claim, private actions pursuant to 18 U.S.C. § 1091 were specifically prohibited by Congress: "Nothing in this chapter shall … be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding." 18 U.S.C. § 1092; *see also Hassain v. U.S. E.P.A.*, No. 96 C 7873, 2001 WL 630678, at *2 (N.D. Ill. May 29, 2001), *aff'd*, 41 F.App'x 888 (7th Cir. 2002) ("the federal genocide statute specifically bars individuals from pursuing a private cause of action.").

Snyder also fails to show that there was congressional intent to create a private right of action under 18 U.S.C. § 242 for deprivation of rights under color of law. Section 242 is the criminal analog to § 1983 and cannot serve as a basis for a private lawsuit. *See Marshall v. Elgin Police Dep't & Detective Houghton*, No. 22-3159, 2023 WL 4102997, at *2 (7th Cir. June 21, 2023) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Nasserizafar v. Ind. Dep't of Transp.*, 546 F.App'x 572, 574 (7th Cir. 2013).

Without showing congressional intent to create a private right of action under either of these statutes, Snyder has no private right to enforce them, and they cannot

form the basis for a § 1983 claim. *See Gonzaga Univ.*, 536 U.S. at 286; *see also Pullins v. Bell*, No. 22-2913, 2023 WL 6871618, at *2–3 (7th Cir. Oct. 18, 2023) (noting jurisdictional deficiency with respect to private litigant's attempt to enforce a criminal statute).

### C. Emergency Use Authorization Claim

Snyder claims that he has a right to refuse administration of the COVID-19 vaccine under the Emergency Use Authorization provisions, 21 U.S.C. § 360bbb-3, of the Federal Food, Drug, and Cosmetic Act (FDCA). [8] ¶¶ 76, 80–83.

Only the federal government is empowered to enforce the FDCA's provisions. 21 U.S.C. § 337(a) ("all ... proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States"). There is no private right of action to assert a violation of the FDCA or its implementing regulations. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance."); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) ("The FDCA does not create a private right of action.").

Snyder argues that the EUA explicitly provides for, and multiple courts have held that there is, a private right of action for individuals who have been injured by

a product that has been authorized under the statute. [22] at 14–16. But Snyder provides no binding authority for this proposition.[2]

Snyder cannot bring a claim based on an alleged violation of the EUA provision. *See, e.g., Anderson v. United Airlines, Inc.*, No. 23 C 989, 2023 WL 5721594, at *2 (N.D. Ill. Sept. 5, 2023) (dismissing plaintiffs' claim that their employer's COVID-19 vaccine mandate violated the EUA in part because the EUA does not provide for a private right of action).

### D. Genetic Information Nondiscrimination Act

Under the Genetic Information Nondiscrimination Act (GINA), it is unlawful for an employer to "discharge[] any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). "Genetic information" is defined as "information about (i) [an] individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." § 2000ff(4)(A). A "genetic test," in turn, "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." § 2000ff(7)(A).

In short, to prevail under GINA, Snyder needs to show that the CTA discriminated against him because of the genetic information it collected from him.

---

[2] *See also* [29], [34], and [40] (warning plaintiff about submitting false legal research to the court).

*See* § 2000ff-1; *see also Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (quoting § 2000ff-9) ("[A]n employer does not violate GINA through 'the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis.'").

Snyder's allegations do not plausibly suggest that the CTA had or requested Snyder's genetic information. Snyder alleges that the CTA discriminated against him because he "chose not to modify [his] genetic structure by not taking the covid 19 vaccine." [8] ¶ 45. For Snyder's allegations to implicate GINA, an individual's COVID-19 vaccination status must be a "genetic test." *See* § 2000ff(4)(A). But Snyder has not alleged that a COVID-19 vaccine is an "analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *See* § 2000ff(7)(A).

Multiple district court to address this issue have held that COVID-19 vaccination requirements do not implicate GINA. *See, e.g., Anderson*, 2023 WL 5721594, at *7–8; *Harden v. Honeywell Int'l, Inc.*, No. 1:23-CV-00176-JPB, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023). I agree.

The EEOC has also concluded that "requiring an employee to show documentation or other confirmation of vaccination from a health care provider unaffiliated with the employer ... is not using, acquiring, or disclosing genetic information and, therefore, is not implicating Title II of GINA." *See What You Should*

*Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,*
U.S. EEOC, https://perma.cc/6NR9-L6YK (archived November 1, 2023). "EEOC
guidelines[,] … 'while not controlling upon courts by reason of their authority, do
constitute a body of experience and informed judgment to which courts and litigants
may properly resort for guidance [in discrimination cases].'" *Karraker v. Rent-A-Ctr.,
Inc.*, 411 F.3d 831, 835 n. 2 (7th Cir. 2005) (quoting *Meritor Sav. Bank v. Vinson*, 477
U.S. 57, 65 (1986)). The EEOC's guidelines are consistent with the statute's text and
confirm that a basic COVID-19 vaccination requirement does not depend on genetic
information.

Snyder's GINA claim is therefore dismissed.

### E.    Title VII

Snyder has adequately stated a claim under Title VII of the Civil Rights Act
which prohibits employers discriminating based on religion. 42 U.S.C. § 2000e-2.

To make a prima facie case of religious discrimination under Title VII, a
plaintiff must show that "(1) the observance or practice conflicting with an
employment requirement is religious in nature; (2) the employee called the religious
observance or practice to the employer's attention; and (3) the religious observance or
practice was the basis for the employee's discharge or other discriminatory treatment.
*Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 449 (7th Cir. 2013) (quotation
omitted). Once an employee has established a prima facie case of religious
discrimination, the burden shifts to the employer to make a reasonable
accommodation of the religious practice or show that any accommodation would

result in undue hardship. *Id*. To survive a motion to dismiss, a plaintiff need not conclusively establish each element of a prima facie showing of discrimination. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Snyder has alleged all three elements.

First, a belief is religious if it is both "religious in the person's own scheme of things and is sincerely held." *Adeyeye*, 721 F.3d at 448. A belief is religious in a person's own scheme of things if it "occup[ies] a place parallel to that filled by God in traditionally religious persons." *Kaufman v. McCaughtry*, 419 F.3d 678, 681–82 (7th Cir. 2005). Such beliefs "deal[ ] with issues of ultimate concern," such as "matters of the afterlife, spirituality, or the soul, among other possibilities." *Adeyeye*, 721 F.3d at 448. A plaintiffs' assertion that "his belief is an essential part of a religious faith must be given great weight." *Id*. (quoting *United States v. Seeger*, 380 U.S. 163, 184 (1965)). The court does not concern itself with the truth or validity of religious belief, nor does it matter whether the belief is part of a mainstream religion or an idiosyncratic one. *Id*. at 451.

Nevertheless, the court must distinguish between religious belief and other matters of personal conviction, because only religious beliefs warrant the heightened protection of Title VII. The EEOC has issued guidance consistent with these principles. According to the EEOC, "objections to a COVID-19 vaccination requirement that are purely based on ... nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*,

14

U.S. EEOC, https://perma.cc/6NR9-L6YK (archived November 1, 2023). However, a religious belief that "overlap[s]" with a political view is still protected by Title VII, so long as the view "is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id.*

Snyder's request for religious accommodation invoked religious texts and his minister. [8] at 36, 42. Snyder raised other non-religious objections to the vaccine, [8] at 62, which may have ultimately been the reason the CTA said that Snyder's "request d[id] not substantiate a sincerely held religious belief or moral conviction that conflict with CTA's requirement that all employees be fully vaccinated against Covid-19." [8] at 60. But on a motion to dismiss, courts must credit the allegations in the complaint as true. Snyder has adequately pled that his objection to the CTA's vaccination policy is a sincerely held religious one, rooted in his belief that the vaccines go against his religious dietary restrictions and tenets of cleanliness. [8] at 36, 42. Snyder's religious beliefs may overlap with his other objections to the vaccine, but Snyder adequately alleges that his beliefs are part of a comprehensive religious belief system and are not simply an isolated teaching. *Id.*

Second, Snyder adequately alleges that he called his religious practice to the CTA's attention when he submitted his religious accommodation request. [8] ¶¶ 3–4, 6, 35.

Third, Snyder alleges that he was discharged for his "alleged non-compliance with the Covid-19 Policy for being non-vaccinated and/or not producing proof of Covid-19 vaccination," due to his religious beliefs. [8] ¶ 26. At this stage, Snyder may allege

the CTA's intent quite generally. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007) (holding religious discrimination plaintiff need only say that the employer held the worker's religion against him).

Thus, Snyder states a Title VII claim for religious discrimination because he alerted his employer to his religious objection to the vaccination requirement and the employer discharged him for violation of the requirement; that is enough to plausibly suggest that his religious beliefs were the basis of the discharge.[3]

### F.  42 U.S.C. § 1983

Snyder brings Count VII under "Title VII of the Federal Civil Rights Act of 1871." [8] ¶ 61–62. The Federal Civil Rights Act of 1871 established 42 U.S.C. § 1983, so I understand Count VII to be a § 1983 claim.

Under § 1983, an individual may sue a municipality for constitutional violations caused by a government "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Section 1983 liability may attach to a municipality in two limited sets of circumstances. If an express municipal policy or "affirmative municipal action is itself unconstitutional," a plaintiff has a "straightforward" path to holding the municipality accountable. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) (citing *Bd. of Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–05 (1997)). In such cases, a single instance of a constitutional violation caused by the policy suffices to establish municipal liability. *Id.* (citing *Bryan Cnty.*, 520 U.S. at

---

[3] Snyder alleges additional objections to the vaccine related to abortion that may also be sincerely held religious beliefs. [8] ¶¶ 49–54. But Snyder did not present these beliefs to the CTA, so they could not have been the basis or a motivating factor for his discharge.

16

405); *Calhoun v. Ramsey*, 408 F.3d 375, 379–80 (7th Cir. 2005) (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 822 (1985)). In contrast, when a plaintiff challenges a facially lawful policy (express or implied), he must provide evidence of a "prior pattern of similar constitutional violations resulting from the policy." *Helbachs Café LLC v. City of Madison*, 46 F.4th 525, 530 (7th Cir. 2022); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021).

The CTA contends that Snyder's § 1983 claim should be dismissed for several reasons. [18] at 7–10. In his response, Snyder fails to respond to any of these points. Thus, he has forfeited this claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

Even if the Snyder had responded, he has failed to state a § 1983 claim. The CTA's vaccination policy is facially lawful, as it provides an exemption for religious accommodations. [8] at 7. Snyder has not provided evidence of a "pattern of similar constitutional violations resulting from the policy." *See Helbachs*, 46 F.4th at 530.

Further, Snyder has failed to show that he was deprived of a federal right, and that the deprivation was caused by the policy. *See First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.*, 988 F.3d 978, 987 (7th Cir. 2021) (holding "the first step in every § 1983 claim" is the plaintiff "initially prov[ing] that he was deprived of a federal right."). "Section 1983 'is not itself a source of substantive rights,' but merely

provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Reading his complaint generously,[4] Snyder has alleged that he was deprived of his "liberty interest under the Due Process Clause in refusing unwanted medical treatment." [8] at 7. Snyder's complaint does not expand on this allegation. Yet, even if Snyder had, his claim would fail. He fails to offer any support to establish a "fundamental right" to be free from a vaccine mandate at a workplace. To the contrary, the Supreme Court upheld a much more onerous vaccine requirement in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (upholding Massachusetts's vaccine mandate that applied to all adults and was enforced with financial penalties and criminal charges). Multiple circuit courts have found there is no fundamental right to be free from the COVID-19 vaccine in the workplace or university, especially when a mandatory vaccination policy provides for religious and medical exemptions like the CTA's does here. *See, e.g., Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602 (7th Cir. 2022), *cert. denied sub nom., Troogstad v. City of Chi., Ill.*, 143 S.Ct. 734 (2023); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021), *clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom., Dr. A. v. Hochul*, 142 S.Ct. 2569 (2022); *Norris v. Stanley*, 73

---

[4] "[A]ny 'document filed *pro se* is to be liberally construed.'" *Otis*, 886 F.3d at 644 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

F.4th 431, 437 (6th Cir. 2023); *Kheriaty v. Regents of the Univ. of Cal.*, No. 22-55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022).

Snyder has failed to show a pattern of violations to the facially lawful policy and has failed to show that he was deprived of a federal right. To the extent that Snyder pleads a § 1983 claim, it is dismissed.

### G.   Health Care Right of Conscience Act

Snyder also fails to state a claim under the Illinois Health Care Right to Conscience Act. Section 13.5 of the Act states that "[i]t is not a violation of this Act … to take any measures or impose any requirements … intended to prevent contraction or transmission of COVID-19. It is not a violation of this Act to enforce such measures or requirements." 745 ILCS 70/13.5. Snyder's claim is based on the CTA's requirement that all employees become fully vaccinated or seek a religious exemption, and the CTA's enforcement of this requirement. Section 13.5 therefore covers his claim. *See, e.g., Krewionek v. McKnight,* 2022 IL App (2d) 220078, ¶¶ 35–38 (2d Dist. 2022), *appeal denied*, 210 N.E.3d 774 (Ill. 2023) (unreleased for publication in permanent law reports and subject to change until published) (applying § 13.5 to dismiss the claims of employees who were fired because they did not get COVID-19 vaccinations).

While § 13.5 amended the Act in June 2022, after the events Snyder alleges occurred, the Illinois legislature made clear that § 13.5 is not a change to the law but rather a clarification of the statute's meaning. 745 ILCS 70/13.5 ("This Section is a declaration of existing law and shall not be construed as a new enactment."); *see also*

*Glass v. Dep't of Corrs.*, 2022 IL App (4th) 220270, ¶¶ 14–24 (4th Dist. 2022), *reh'g denied* (Apr. 27, 2022), (holding § 13.5 is an "interpretive aid" for the anti-discrimination provision which was previously ambiguous as to COVID-19 vaccination requirements). Because § 13.5 is a clarification of the Act's original coverage, it follows that the legislature applied the amendment to all potential claims, whether the actions at issue occurred before or after its enactment. *See* 745 ILCS 70/13.5. Section 13.5 therefore applies to this case and requires the dismissal of Snyder's claims under the Health Care Right to Conscience Act.

### H. Illinois Religious Freedom Restoration Act

To state a claim under the Illinois Religious Freedom Restoration Act, a plaintiff must first allege that government action has substantially burdened the exercise of his religion through any rule or enactment, even if it is a rule of general applicability. 775 ILCS 35/15. Once the plaintiff has established the substantial burden on the exercise of his religion, the government may defend its rule by showing that the "application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." *Id.*

A substantial burden on the free exercise of a religion is "the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation." *Diggs v. Snyder*, 333 Ill.App.3d 189, 194–95 (5th Dist. 2002) (citing to *Wisconsin v. Yoder*, 406 U.S. 205, 217–18 (1972)). Illinois courts have referred to the federal RFRA when analyzing claims under the Illinois act. *See id.* at

194. A paradigmatic example of a substantial burden on the free exercise of religion is the government forcing an individual to choose between their religious beliefs and their work. *Sherbert v. Verner*, 374 U.S. 398, 404 (1964).

Snyder has alleged that he faced such a coercive choice. Snyder alleges that he was faced with the choice to either abandon his religious convictions (manifested in his practices of cleanliness and dietary restrictions) to comply with the vaccination policy or face termination. Snyder has adequately stated a claim under the Illinois RFRA.

## I.      Remaining Claims

Snyder's remaining two claims simply claim: "Employer Doesn't Want to Make Accommodations for Disabilities, Allergies and Religious Exemption Damages" and "Violation of EEOC Regulations." [8] ¶¶ 33–43. Snyder has not alleged any facts to support a disability discrimination claim. He does not allege which EEOC regulations he believes the CTA violated, nor shown that he has a right to enforce them.[5] Counts I and II are therefore dismissed.

## IV.     Conclusion

Defendant's Motion to Dismiss is granted as to Count I, Count II, Count III, Count V, Count VII, Count VIII and Count IX. Those claims are dismissed with

---

[5] Snyder also failed to respond to the CTA's contention that his EEOC regulations claim lacks merit, thus forfeiting that point as well. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

prejudice.[6] The Motion to Dismiss is denied as to Snyder's Title VII (Count VI) and Illinois RFRA (Count IV) claims. Defendant must answer the Title VII and Illinois RFRA claims by November 27, 2023. Defendant must confer with plaintiff and file a joint status report with proposed case schedule by December 4, 2023. In sum, Snyder can proceed on a claim of religious discrimination but no others.

ENTER:

Manish S. Shah
United States District Judge

Date: November 6, 2023

---

[6] Ordinarily, a plaintiff should be given an opportunity to try to amend the complaint. *See Runnion v. Girl Scouts of Greater Chi. & NW Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). But it would be futile to try to amend these claims. *See id.* Snyder offers no explanation for how he would amend the claims that he forfeited by not responding to defendant's arguments, and he cannot raise claims for which he has no private right of action. To the extent there is no jurisdiction over his claims (e.g., his efforts to enforce criminal statutes), those claims are dismissed without prejudice for lack of jurisdiction. But such dismissals are still final, and Snyder must not attempt to file such claims again.