UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHON SNYDER,<br><br>    Plaintiff,<br><br>    v.<br><br>CHICAGO TRANSIT AUTHORITY,<br><br>    Defendant. | No. 22 CV 6086<br><br>Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Plaintiff Rashon Snyder was a bus-operator for the Chicago Transit Authority when it implemented a mandatory COVID-19 vaccination policy. He sought an exemption from the policy on religious grounds but was denied. When Snyder did not comply with the vaccine policy, he was discharged. Snyder brought this lawsuit alleging that the CTA's failure to accommodate his request violated Title VII and the Illinois Religious Freedom Restoration Act. The CTA moves for summary judgment.

### I.     Legal Standard

Summary judgment is warranted if there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "'Material facts' are facts that 'might affect the outcome of the suit,' and a dispute as to those facts is 'genuine' if 'the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party.'" *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The non-moving party is given "the benefit of

conflicting evidence and any favorable inferences that might be reasonably drawn from the evidence." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022).

## II. Rule 56.1 Statement of Facts

Snyder did not respond to the CTA's Local Rule 56.1 Statement of Facts. Instead, he submitted a document responding to each paragraph of the CTA's Memorandum of Law in Support of its Motion for Summary Judgment. [77].[1] While Snyder addressed some of the CTA's cited facts, his responses are insufficient. Under Local Rule 56.1(e), each response and asserted fact must be supported with a specific reference to the record. N.D. Ill. Local R. 56.1(e)(2)–(3); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Snyder's responses often include legal conclusions and unsupported factual statements. *See* [77]. When he does cite to the record, he cites to an exhibit in its entirety or to "All Exhibits." *See, e.g.,* [77] at 2–3, 8.

I recognize that Snyder is a pro se litigant and construe his filings liberally. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. App'x 642, 643 (7th Cir. 2011). Yet courts "may nonetheless require strict compliance with local rules." *Id*. This is particularly true for Rule 56.1 due to its "important function . . . in organizing the evidence and identifying disputed facts." *Cracco*, 559 F.3d at 632. Snyder was provided with Local Rule 56.2 notice covering the requirements of Local Rule 56.1 in October 2024. [75]. His failure to respond adequately leaves the CTA's statements of facts uncontroverted and admitted to the extent they are supported by evidence in

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [74] ¶ 1.

the record. *See* N.D. Ill. Local R. 56.1(e)(3); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

**III. Facts**

Snyder worked as a bus-operator for the CTA from September 2015 until June 2022. [74] ¶¶ 5, 73. His duties included following a set schedule in a safe, efficient, and courteous manner to allow passengers to board, travel, and alight at bus stops; helping passengers board the bus; and fielding passengers' questions. [74] ¶ 7.

In September 2021, the CTA implemented a Mandatory COVID-19 Vaccination Policy for All Employees. [74] ¶ 16. Employees were required to submit proof that they were fully vaccinated against COVID-19 by November 2021. [74] ¶¶ 17, 24. The vaccination policy allowed employees to submit a Request for Religious Accommodation or Moral Conviction Exemption when a sincerely held religious belief or observance prevented them from receiving the COVID-19 vaccine. [74] ¶ 19.

The CTA's Religious Accommodation Review Committee processed religious accommodation requests. [74] ¶ 25. After reviewing a request and any follow-up information, the committee determined by majority vote whether the employee sufficiently made a connection between their religious belief and their inability to comply with the vaccination policy. [74] ¶ 28. The committee did not decide whether an employee's asserted belief was sincerely held. [74] ¶ 29.

In September 2021, Snyder submitted a request for religious accommodation seeking a "full exemption from any vaccines" and boosters. [74] ¶ 35. His request stated that he "practice[d] the laws of cleanliness and the dietary laws outlined in the books of Leviticus, the 11th Chapter and Deuteronomy, the 14th Chapter." [74] ¶ 36.

3

He objected to the policy because "[t]he [B]ible instruct[ed him] to refrain from the ingestion of unclean animals, in this instance, pork or derivatives, such as gelatin which [we]re in most vaccines." *Id*. His request did not state that the COVID-19 vaccines contained pork, its derivatives, or gelatin. [74] ¶ 50.

Snyder attached a letter from his minister which further stated: "[V]accines and immunizations are inconsistent with the beliefs of our culture. Although an individual is encouraged to make informed decisions and is at liberty to choose to receive such vaccinations or immunizations at their discretion. It is the decision of Rashon Snyder . . . to forgo being vaccinated and ask that his request for exemption be granted to him at this time." [74] ¶ 37. He also submitted a list of more than sixty vaccines titled, "Vaccine Excipient Summary," which did not include the COVID-19 vaccines. [74] ¶¶ 38–39.

After reviewing the request, the committee asked Snyder to "[b]riefly explain the connection between [his] sincerely held religious belief or moral conviction to [his] refusal to take the COVID-19 vaccine." [74] ¶¶ 40–41. It also asked, "Apart from taking the vaccine, what accommodation are you requesting? Please be specific. The accommodation is the practice that will be put into place should your request be approved. A request that you do not take the COVID-19 vaccine is not an accommodation in and of itself." [74] ¶ 41.

Snyder responded reiterating that he followed cleanliness and dietary laws, refrained from ingesting "unclean animals," and that vaccination did not align with his "culture." [74] ¶ 43. He added, "[b]ecause of this I cannot serve my God and my

4

way of life; the way I'm supposed to." *Id.* He requested "full exemption from any vaccinations or boosters that may come up. All of these vaccinations and boosters usually come from animal base product and other unnatural harmful things to the body. (such as heavy metals that are in most vaccinations.) (These things are unclean and do harm to the body long-term.) This vaccination has not been tested for the amount of years that a normal vaccination will have to take in order to get approved which is 10 to 20 years. They do not know the long term effect of this vaccination. And is considered experimental by most scientists and doctors. This is another reason with a long list of other reasons why I am asking for an exemption." [74] ¶ 44.

He included four website links for the committee to review and consider. [74] ¶ 45. One linked to an article titled "Vaccine Side Effects and Adverse Events;" the second linked to a video by "Patriot Voice Radio Network" titled, "Doctor Explains the COVID-19 'Vaccine'—Ingredients and Side Effects;" the third linked to an InfoWars.com article about vaccines weakening the immune system; and the fourth linked to a "Project Veritas" YouTube video titled "Pfizer Whistleblower Leaks Execs Emails: 'We Want to Avoid Having Info on Fetal Cells Out There.'" [74] ¶¶ 46–49.

In April 2022, the committee denied Snyder's request because it "d[id] not substantiate a sincerely held religious belief or moral conviction that conflict[ed] with the CTA's requirement that all employees be fully vaccinated against COVID-19." [74] ¶¶ 51–52. The denial notified Snyder that failure to comply with the vaccine policy would subject him to discipline up to and including discharge. [74] ¶¶ 53–54.

5

Snyder's management was also told that his request was no longer pending. [74] ¶ 52. All other information related to his request was kept confidential. [74] ¶ 52.

In May 2022, a CTA senior manager held two disciplinary interviews with Snyder and a union representative. [74] ¶¶ 63–68. Snyder was charged with a behavioral violation for failing to comply with the vaccine policy, was given a final written warning, and was removed from service. [74] ¶¶ 65–68. Snyder did not mention his religion or religious beliefs during either interview. [74] ¶ 69. In June 2022, Snyder was discharged by a CTA general manager. [74] ¶¶ 67–68, 71–73. The general manager was not aware of, nor considered, Snyder's religion in discharging him. [74] ¶¶ 74–76.

Snyder filed this lawsuit alleging religious discrimination claims under Title VII and the Illinois Religious Freedom Restoration Act. [8]. The CTA moves for summary judgment. [72].

IV. Analysis

    A.    Title VII

To make a prima facie case of religious discrimination under Title VII, a plaintiff must show that "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment." *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 449 (7th Cir. 2013) (quotation omitted). Once an employee has established a prima facie case of discrimination, the burden shifts to the employer to reasonably accommodate the

6

religious practice or show that any accommodation would result in undue hardship. *Id.*

The CTA concedes that Snyder provided notice of an alleged religious practice but argues that Snyder has not shown that his objections to the COVID vaccines were sincerely held and religious in nature, nor that the CTA discharged Snyder based on his religion. [73] at 4.

### 1. Religious Beliefs

To demonstrate that his beliefs were religious in nature, Snyder must present evidence that would permit a reasonable jury to find "(1) the belief for which protection is sought is religious in [Snyder]'s own scheme of things and (2) that it is sincerely held." *Adeyeye*, 721 F.3d at 451. Courts have the "authority and competence" to determine whether there is a factual dispute as to the sincerity and religiosity of a plaintiff's beliefs. *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013).

The CTA argues that Snyder did not sincerely hold his anti-vaccination beliefs but simply parroted the beliefs of his minister. [73] at 10. Snyder testified that most of the information in his request was prepared or confirmed by his minister. [74] ¶¶ 37–38; [74-2] at 110. The CTA argues that this shows the beliefs were not Snyder's own. [73] at 10; *Adeyeye*, 721 F.3d at 451 ("[I]t is not enough for the belief to be religious in nature, it must also be the employee's own religious belief."). But Snyder also testified that he personally held these beliefs. *See* [74-2] at 111. Snyder's reliance on his religious leader's articulation of these beliefs does not negate Snyder's own sincerity.

7

The CTA also argues that Snyder has been inconsistent as to the bases for his objection to the COVID vaccines. [73] at 9–10. It argues that though Title VII does not require "perfect consistency in observance, practice, or interpretation," Snyder's changing reasoning gives an objective basis to question his sincerity. [73] at 10. While inconsistencies may undermine Snyder's credibility, whether Snyder sincerely holds his religious beliefs is ultimately a question of fact more suitable for a factfinder. *See EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (explaining determining whether a belief is sincerely held "depend[s] on [an] assessment of the employee's credibility"); *see also EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment."). Snyder has created a triable issue of fact as to the sincerity of his beliefs.

That said, Snyder has not presented evidence to support a finding that his objection to the COVID-19 vaccines was religious in nature. A belief is religious when it "occup[ies] a place parallel to that filled by God in traditionally religious persons." *Adeyeye*, 721 F.3d at 448. Such significant religious beliefs "deal[] with issues of ultimate concern" including "the afterlife, spirituality, or the soul." *Id.* Religious beliefs should create a religious obligation to practice or observe in a certain matter. *Kaufman v. McCaughtry*, 419 F.3d 678, 681–82 (7th Cir. 2005). Courts may not inquire into the truth or validity of such beliefs, nor does it matter whether the belief

8

is part of a mainstream religion or an idiosyncratic one. *Adeyeye*, 721 F.3d at 448, 451.

When seeking an exemption from a vaccine mandate, courts have required plaintiffs show a connection between their opposition to the vaccine and a specific religious belief or practice. "Religious accommodation requests rooting themselves entirely in safety considerations with no plain and express connection to religion will fall outside of [Title VII]." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011 (7th Cir. 2024). "[O]bjections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. EEOC, https://perma.cc/LN22-DFBW (archived June 20, 2025).[2]

Snyder provided various reasons he could not comply with the vaccine policy: vaccines usually contain "unnatural harmful things," that are "unclean and do harm to the body long-term;" the vaccines were developed rapidly and without adequate testing; the long-term effects of the vaccines were unknown; and the vaccines were considered experimental by scientists and doctors. [74] ¶ 44. His cited links discussed vaccine side effects, ingredients, and development. [74] ¶¶ 45–49.

---

[2] Documents promulgated by federal administrative agencies are subject to judicial notice, *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000).

These beliefs cannot be considered religious in nature. The professed beliefs that vaccines may contain harmful ingredients and may cause unknown side effects do not "address fundamental and ultimate questions having to do with deep and imponderable matters" and are not "comprehensive in nature." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 491–92 (3d Cir. 2017). "[W]orries about the health effects of [a] vaccine" and "a disbelief of [a] scientific view" do not demonstrate a religious belief. *Id.* at 492; *see also Guthrie-Wilson v. Cook Cnty.*, No. 91:23-CV-362, 2023 WL 8372043, at *3 (N.D. Ill. Dec. 4, 2023) (finding that plaintiff's beliefs were not sincerely religious because they were "facially tied" to health concerns regarding the vaccine's effects); *Brown v. Cook Cnty. Auditor's Off.*, No. 23-CV-10452, 2024 WL 3426888, at *4 (N.D. Ill. Jul. 16, 2024) (same). Such concerns instead point toward a belief that is "scientific and secular." *Mason v. General Brown Cent. School Dist.*, 851 F.2d 47, 51 (2d Cir. 1988); *see, e.g., Brown*, 2024 WL 3426888, at *4 (holding that health concerns presented as religious beliefs are not afforded Title VII protection).

"This is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected." *Fallon*, 877 F.3d at 492–493. A belief that "overlap[s]" with a political view is still protected by Title VII, so long as the view "is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id.* at 491; *Passarella*, 108 F.4th at 1010–11. Snyder's request also stated that he "practice[d] the laws of cleanliness and the dietary laws outlined in the books of Leviticus, the 11th Chapter and Deuteronomy, the 14th Chapter." [74] ¶ 36. Specifically, "[t]he [B]ible instruct[ed

10

him] to refrain from the ingestion of unclean animals, in this instance, pork or derivatives, such as gelatin which [we]re in most vaccines." *Id.* Snyder did not elaborate further as to the religious significance of this practice. *Id.* When asked for more details, Snyder objected to the "heavy metals" and "animal base product and other unnatural harmful things to the body" that are in "most" vaccines. [74] ¶¶ 42–50.

Snyder does not present evidence of how this practice made him "religiously obligated" to avoid the COVID vaccines. Even accepting Snyder's belief—that he abstain from "heavy metals," "animal base product and other unnatural harmful things"—as religious, Snyder did not connect this belief to the COVID vaccinations specifically. Snyder never stated that the COVID vaccine contained materials that he was religiously obligated to avoid. [74] ¶ 50. And his provided list of contraindicated vaccines did not include the COVID vaccines. [74] ¶¶ 38–39. Snyder also admits that he "never said that the COVID vaccination contained [pork and gelatin] in there." [74-2] at 111. At best, Snyder has presented evidence of a general religious practice, but not how it is applicable in this specific instance.[3] *See Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at *3 (N.D. Ill. Apr. 10, 2024) (finding that employee's unadorned allegations that he held vague "'Christian' beliefs 'against getting the COVID-19 vaccine'" were insufficient to support Title VII religious

---

[3] Snyder later testified that he holds "a sincere . . . belief against all the vaccines," and that "the body immune system is God's protection, not any vaccination, not any vaccination that a man can create. I'm already with my own personal immune system that the creator created within me." [74-2] at 110–11. This could indicate a broader religious practice, but Snyder did not disclose this belief to the CTA.

11

discrimination claim because he did not explain "how his beliefs conflict[ed] with vaccination"); *Nelson-Godfrey v. Cook Cnty.*, 735 F.Supp.3d 976, 979–80 (N.D. Ill. 2024) (same); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003) ("[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief.").

Snyder argues that he "has demonstrated a sincerely held belief by showing it is central to [his] life or faith, consistent in [his] actions and requests, and that [he has] adhered to it even if it doesn't align with mainstream doctrines." [79] at 4. But he offers no legal or factual support for these statements. *See id*. A plaintiff cannot rely on speculation and conclusions unsupported by evidence in the record at summary judgment. *See Flowers v. Kia Motors Fin.*, 105 F.4d 939, 946–47 (7th Cir. 2024) ("Speculation cannot create a genuine issue of fact that defeats summary judgment"); *Smith v. State Farm Ins. Co.*, 347 Fed. App'x 228, 230–31 (7th Cir. 2009) (affirming summary judgment when *pro se* plaintiff failed to present evidence to support her arguments).

Snyder presents no evidence on which a reasonably jury could find that his disclosed objection to the COVID-19 vaccine was religious in nature.

### 2. *Legitimate Business Reason*

The CTA has also shown that it had a legitimate business reason to discharge Snyder—he failed to comply with the vaccine policy. [74] ¶ 73. An employer action based on safety concerns and noncompliance with a work policy is a legitimate business reason for adverse employment action. *See Coggin v. Medline Indus., Inc.*, 749 F.Supp.3d 960, 970 (N.D. Ill. 2024); *Moss v. Sage Bluff Health & Rehab Ctr., LLC*,

No. 1:22-CV-036-HAB-SLC, 2024 WL 808567, at *7 (N.D. Ind. Feb. 27, 2024); *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012).

The burden shifts to Snyder to prove that (1) the CTA's reasons for discharge was pretextual, i.e., "a lie or a phony reason," and (2) the true reason for discharging Snyder was based on religious discrimination. *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023). "To show pretext, plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in defendants' stated reasons for their allegedly discriminatory actions that a reasonable person could find it unworthy of credence." *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 561 (7th Cir. 2019) (cleaned up). If the CTA "honestly believed" its stated rationale for its Snyder's discharge, even if the honest belief was "foolish, trivial, or baseless," Snyder's claim cannot succeed. *Barnes-Staples*, 88 F.4th at 716.

The CTA's reasons for discharging Snyder have remained constant—he was subject to discipline and discharge because of his failure to comply with the vaccine policy. [74] ¶¶ 63–76. The CTA kept information related to Snyder's religious accommodation requests confidential, and Snyder's managers did not know or discuss Snyder's religion or religious beliefs with him. [74] ¶¶ 32, 52, 69, 74–76. Snyder has submitted no evidence that indicates the CTA's reason for discharging him was false.

The CTA is entitled to summary judgment on Snyder's Title VII claim.

### B. Illinois Religious Freedom Restoration Act

To support a claim under the Illinois Religious Freedom Restoration Act, a plaintiff must first show that government action substantially burdened the exercise of his religion through any rule or enactment, even if it is a rule of general

13

applicability. 775 ILCS 35/15. Once the plaintiff has established the substantial burden on the exercise of his religion, the government may defend its rule by showing that the "application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." *Id*.

A substantial burden on the free exercise of a religion is "the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation."[4] *Diggs v. Snyder*, 333 Ill.App.3d 189, 194–95 (5th Dist. 2002) (citing to *Wisconsin v. Yoder,* 406 U.S. 205, 217–18 (1972)). A paradigmatic example of a substantial burden on the free exercise of religion is the government forcing an individual to choose between their religious beliefs and their work. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Snyder has not demonstrated how the vaccination policy prevented him from engaging in the basic tenets of his religion. Snyder's state-law claim is based on his objection to the vaccines "because of the connect[ion] between all three COVID-19 vaccines . . . and the cell lines of aborted fetuses." [8] ¶ 49. He alleges that he holds a sincere religious belief "that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life." [8] ¶ 50.

---

[4] Illinois courts have referred to the federal RFRA when analyzing claims under the Illinois act. *See Diggs*, 333 Ill.App.3d at 194.

Beyond his complaint, Snyder has not presented any evidence of this religious belief. Allegations are not admissible evidence. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020).[5] Without evidence of a religious practice, there is no way to assess whether the policy substantially burdened Snyder's exercise of it. *Soc'y of Divine Word v. United States Citizenship & Immigr. Servs.*, 129 F.4th 437, 450 (7th Cir. 2025) ("[T]o assess whether a given regulation substantially burdens a religious belief, [the court] must know what beliefs the claimant contends the regulation offends."). On this record, no reasonable jury could find that the CTA's vaccine policy was a substantial burden on Snyder's religious exercise. The CTA is entitled to summary judgment.

## V. Conclusion

Defendant's motion for summary judgment, [72], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 20, 2025

---

[5] Snyder's complaint was not verified under oath or affirmation; it is not a testimonial affidavit that can be considered evidence at summary judgment.